[No. B177632. Second Dist., Div. Seven. May 15, 2006.]

In re the Marriage of DAVID and MARTHA M.
DAVID M. Appellant, v.
MARTHA M. Respondent.

**COUNSEL**

Vincent W. Davis & Associates, Vincent W. Davis and Elizabeth Briceño-Velasco for Appellant.

Thomas P. Dovidio for Respondent.

OPINION

**WOODS, J.**—David M. appeals from orders of the family court which modified a prior juvenile court exit order concerning his visitation rights and child support payments for his daughter Amy. He argues the family court applied the incorrect legal standard in modifying the juvenile court's exit order. Specifically, appellant asserts the family court should have applied the "change of circumstances and best interest" test provided in Welfare and Institutions Code section 302, subdivision (d).[1] The family court, however, applied only a "best interests of the child" rule in ordering modification and concluded respondent Martha M. did not need to demonstrate a change of circumstances to modify the exit order. Appellant also argues the court erred in ordering him to pay child support arrearages. As we shall explain, the family court erred in failing to modify the exit order in accordance with section 302, subdivision (d). Consequently, we reverse the visitation order and remand for the court to consider the matter pursuant to the standards set forth in section 302, subdivision (d). In addition, because the child support and arrearages order was dependent on the visitation order, we reverse and remand the child support and arrearages order for reconsideration as well.

## FACTUAL AND PROCEDURAL HISTORY

Appellant and respondent were married in 1993 and separated in 1997. Amy M., the parties' daughter, was born in January 1997. Pursuant to the judgment of dissolution entered on February 14, 2001, both parents were to retain joint legal and physical custody of Amy, with respondent to retain primary physical custody. In particular, the original custody order stated appellant's timeshare with Amy as follows: (1) alternate weekends from 7:30 p.m. Friday evening until 6:30 p.m. Sunday evening; (2) each Tuesday and Thursday from 7 p.m. to 9 p.m.[2] Additionally, the order required appellant to pay respondent $700 per month commencing on August 15, 2000, as child support.

Subsequently, on October 20, 2000, respondent reported to the Department of Children and Family Services (DCFS) that appellant had sexually molested Amy. DCFS initiated a juvenile dependency petition against appellant. (Super. Ct. L.A. County case No. CK43859.)[3] A juvenile dependency petition was filed and later amended to reflect an allegation that a conflict between the

---

[1] All references to statute are to the Welfare and Institutions Code unless otherwise indicated.

[2] This amounted to an approximate timeshare for appellant of 20 percent.

[3] We have sua sponte taken judicial notice of the contents of the juvenile court's case filed in case No. CK43859, pursuant to Evidence Code sections 452, subdivision (d) and 459.

parents existed which placed the child at risk.[4] At the detention hearing the juvenile court ordered the matter continued for the parties to participate in mediation and Amy was released to her mother. The juvenile court also ordered the family law case and the juvenile dependency proceedings consolidated/coordinated, indicating that all matters relating to custody, visitation, and placement for Amy would be heard in the juvenile court until the juvenile court "dismisses the petition or terminates jurisdiction."

On February 22, 2001, the juvenile court sustained the amended petition, ruling that the minor was a person described by section 300, subdivision (b), declaring Amy dependent of the juvenile court and ordering Amy be placed in respondent's home with supervision by the DCFS. Appellant was ordered to have monitored visitation on Tuesday evenings and on Saturdays.

Over a year later the parties reached a mediated agreement as to visitation. On February 27, 2002, the juvenile court entered an exit order pursuant to section 362.4. The exit order provided the following: (1) joint legal and physical custody of Amy to both parents, with primary physical custody belonging to respondent; (2) appellant's time with Amy would include (a) every 1st and 3d weekend of the month from Friday after school until Monday morning drop-off at school, and (b) every 2d and 4th Wednesday after school to Friday morning drop-off at school.[5] The minute order from the February 27, 2002, hearing and the exit order state the juvenile court had terminated its jurisdiction in the dependency proceedings and that any requests for modification must be brought in family court.

The exit order made no change and no mention of appellant's monthly $700 child support payments.

On December 20, 2002, respondent applied for an order to show cause (OSC) to modify the exit order in the family court. On February 10, 2003, appellant filed a responsive declaration to the OSC objecting to a modification of the exit order.

On March 14, 2003, appellant also applied for an OSC to modify the original support order's allocation of child support payments. He contended

---

[4] The first amended petition alleged a failure to protect under section 300, subdivision (b) and stated: "There exists a conflict between David and Martha [M.], parents of Amy [M.]. Said conflict consists of mother accusing father of sexually molesting the child and father raising questions of mother's emotional stability. Further the child Amy has made statements that her father inappropriately sexually touched her which she appears to believe as true. Said conflict places the child at substantial risk of emotional harm."

[5] The custody order amounted to an approximate 43 percent timeshare for appellant with Amy, an increase of 23 percent from the original custody and visitation order.

his increased timeshare with Amy as reflected in the juvenile court's exit order ought to reduce his monthly child support payments.

On June 2, 2003, the parties entered into a temporary stipulation regarding the child support payments, which stated appellant would pay respondent $180 per month retroactive to March 14, 2003. The stipulation also provided the court would revisit the child support issue on August 21, 2003. Subsequently, on August 12, 2003, respondent filed a responsive declaration to the OSC, arguing the family court should not reduce appellant's child support payments. On August 21, 2003, the family court appointed Tisha Harman as Amy's counsel.

At the family court hearing on June 21, 2004, the court granted respondent's custody and visitation OSC applying the "best interests of the child" rule of *Montenegro v. Diaz* (2001) 26 Cal.4th 249 [109 Cal.Rptr.2d 575, 27 P.3d 289]. In particular the court ordered (1) appellant's timeshare with Amy would be (a) from 6 p.m. on Friday evenings to 6 p.m. on Sunday evenings on alternate weekends, and (b) from 5:30 p.m. to 7 p.m. every Wednesday;[6] and (2) appellant would pay respondent $557 per month in child support payments made retroactive to September 1, 2003. The court also ordered that for the period of September 1, 2003, to July 1, 2004, appellant would pay the difference between the stipulated child support payment of $180 per month and the modified child support payment of $557 per month, a total of $3,770.

This timely appeal followed.

## DISCUSSION

### I. *Modification of the Juvenile Court's Exit Order*

On appeal, appellant contends the court used the incorrect legal standard in modifying the exit order because the court adopted the "best interests of the child" rule as opposed to a "change of circumstances" rule as mandated by section 302, subdivision (d). We agree.

In general, child custody and visitation orders in family court proceedings are subject to the trial court's broad discretion and an abuse of discretion is found only where the court exceeds the bounds of reason. (See *Montenegro v. Diaz, supra,* 26 Cal.4th at p. 255.) Nonetheless, appellant's contention as to

---

[6] This arrangement reflected a 20 percent timeshare for appellant with Amy. Overall, the effect of the court's modification was to essentially reinstate the original custody and visitation order.

the appropriate legal standard to apply in ruling on the custody and visitation OSC raises a question of law, which we review de novo. (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1378 [18 Cal.Rptr.3d 306].)[7]

■ In the instant matter, the juvenile court issued the exit order pursuant to section 362.4.[8] Respondent subsequently sought to modify that exit order. Under section 302, subdivision (d), any modification of that exit order entered pursuant to section 362.4 requires a finding there has been a significant change of circumstances since the juvenile court issued the order and the modification is in the best interests of the child.[9] Both parties concede the juvenile court issued its order pursuant to section 362.4. Based on the clear language of section 302, subdivision (d), the trial court was required to find a significant change in circumstances before it could have modified the exit order.

This notwithstanding, the record from the OSC hearing reflects the court decided the case on a best interest rationale alone. The court stated: "What the court looks to is what's best for the child in the court's opinion . . ." and

---

[7] In *Montenegro*, the Supreme Court applied the abuse of discretion standard in considering whether the trial court had erred in utilizing the changed circumstance rule rather than the best interest test in determining a request for custody. (*Montenegro v. Diaz, supra*, 26 Cal.4th at p. 255.) However, the issue of which standard of review to apply was not before the *Montenegro* court. Therefore, its use of the abuse of discretion standard does not constitute authority for the proposition that is the proper standard of review. (E.g., *People v. Gilbert* (1969) 1 Cal.3d 475, 482 [82 Cal.Rptr. 724] ["It is axiomatic that cases are not authority for propositions not considered"].) In any event, appellant would prevail under the de novo or the abuse of discretion standard. Thus, the question of which standard of review to apply is not dispositive in this case.

[8] Section 362.4 provides in pertinent part:

"When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and proceedings for dissolution of marriage, for nullity of marriage, or for legal separation, of the minor's parents, or proceedings to establish the paternity of the minor child brought under the Uniform Parentage Act, Part 3 (commencing with Section 7600) of Division 12 of the Family Code, are pending in the superior court of any county, or an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue a protective order as provided for in Section 213.5 or as defined in Section 6218 of the Family Code, and an order determining the custody of, or visitation with, the child. [¶] Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court."

[9] Section 302, subdivision (d) provides: "Any custody or visitation order issued by the juvenile court at the time the juvenile court terminates its jurisdiction pursuant to Section 362.4 regarding a child who has been previously adjudged to be a dependent child of the juvenile court shall be a final judgment and shall remain in effect after that jurisdiction is terminated. The order shall not be modified in a proceeding or action described in Section 3021 of the Family Code unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child."

"the fact is that we look to see what the court considers best for the child over the long run." The record does not disclose any other basis for the court's decision. Moreover, on the record from the OSC hearing, we cannot conclude a family court properly applying section 302, subdivision (d) would have found a significant change of circumstances to modify the order.[10] By applying the best interest rule in lieu of the change in circumstances rule, the court made a clear legal error.

Respondent, however, argues the court properly applied only the best interest rule and section 302, subdivision (d) does not apply to the exit order, because there is no evidence Amy was "adjudged" a dependent of the juvenile court. On the contrary, the record in the juvenile court proceeding establishes the child was declared a dependent on February 22, 2001. Consequently, in modifying the juvenile court exit order the family court was required to comply with section 302, subdivision (d).

Respondent also argues the court properly applied the best interest test because the exit order was not a "final order." She relies on *Montenegro* to establish the exit order was not final. In *Montenegro*, the California Supreme Court concluded the exit order was not final, because the order contained language indicating it was a temporary arrangement. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 259.) The court also found conduct by the parties to suggest they did not intend for the exit order to be permanent. (*Ibid.*) Because the court held the order was temporary, the court did not require a change of circumstances to modify the exit order. Respondent claims this court is bound by the ruling in *Montenegro* and thus this court must find the exit order was a temporary arrangement and the change of circumstances rule does not apply.

Respondent's argument is unpersuasive for several reasons. The order in *Montenegro* is clearly distinguishable from the order in this case. Here the order states it is a final judgment in its attachment, while the order in *Montenegro* expressly indicated it was temporary. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 259.) In addition, section 302, subdivision (d) provides any exit order issued pursuant to section 362.4 shall be a "final judgment" and as such *Montenegro* does not control here. Consequently, we conclude the juvenile court's exit order was final.

Finally, the other case respondent relies on does not control because it predates the enactment of section 302, subdivision (d). In her brief, respon-

---

[10] The entire basis of the OSC to modify visitation focused on the interests of the child. According to respondent and Amy's counsel the visitation schedule established in the exit order was inconvenient for the minor and the minor did not care for the schedule. Respondent did not argue that a substantial change of circumstances existed warranting modification.

dent cites *In re John W.* (1996) 41 Cal.App.4th 961 [48 Cal.Rptr.2d 899] to argue section 362.4 juvenile exit orders are not permanent in any sense. In particular, respondent asserts *In re John W.* establishes section 362.4 exit orders cannot be equated with permanent family law custody and visitation orders. This may have been true prior to the inception of section 302, subdivision (d) in 2000, but pursuant to section 302, subdivision (d) a section 362.4 juvenile court exit order *shall* be a final judgment and *shall* remain in effect after the jurisdiction of the juvenile court is terminated unless modified in compliance with the change of circumstances/best interest rule. Accordingly, section 302, subdivision (d) is dispositive in this case.

In sum, section 302, subdivision (d) compelled the family court to find a significant change of circumstances and that the modification was in the best interests of the child before the family court modified the juvenile court visitation order. There is nothing in the record to indicate the court made such a finding. In view of the foregoing, we find the family court erred in failing to apply the appropriate test in modifying the juvenile court exit order.

## II. *Child Support and Arrearages Order*

Appellant contends the family court erred by ordering him to pay child support arrearages from September 1, 2003, and that the monthly child support payments of $557 should have been ordered to begin prospectively from July 1, 2004. The rationale for appellant's argument is the child support arrearages ought to correspond to his timeshare with Amy. Therefore, because the current (June 2004) order provided for a 20 percent timeshare for appellant with Amy, the child support payments of $557 per month should not be made retroactive to a period during which appellant had a 43 percent timeshare.

We will not reach the merits of appellant's arguments because as resolution of this matter depends on the visitation arrangement. The child support payments and the arrearages amount are directly tied to and determined by appellant's timeshare with Amy. Consequently, since the visitation arrangement must be revisited on remand, the child support and arrearages order must also be reexamined.

## *DISPOSITION*

The orders are reversed and remanded for further proceedings consistent with the views expressed in this opinion. The appellant is entitled to costs on appeal.

Johnson, Acting P. J., and Zelon, J., concurred.

On June 20, 2006, the opinion was modified to read as printed above.