Filed 10/15/13  In re M.A. CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.A., a Person Coming Under the Juvenile Court Law. | H038920 (Santa Clara County Super. Ct. No. JD20993) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. Marcos A., Defendant and Appellant. L.C., Defendant and Respondent. | |

In this juvenile dependency action, Marcos A. (Father) argues that the juvenile court erred by failing to award him sole legal custody of his two-year-old son, M.A. Father also argues that the juvenile court exceeded its authority by retaining jurisdiction over requests to modify custody and visitation after dismissing the dependency case. Finding no error, we will affirm the juvenile court's final judgment terminating dependency jurisdiction and awarding joint legal custody.

# I.  BACKGROUND

In March 2012, the juvenile court sustained allegations in an amended juvenile dependency petition supporting jurisdiction over M.A. under Welfare and Institutions Code section 300, subdivisions (a) and (b).[1]  The juvenile court declared M.A. to be a dependent of the court, and placed him in the custody of Father.  The court ordered Father to complete parenting classes and counseling, and to comply with drug and alcohol testing.  The court ordered the mother of M.A. (Mother), who was in custody, to complete parenting classes and counseling, and to submit to a psychological evaluation.

The amended petition alleged that M.A. was placed in protective custody on December 25, 2011, after Mother dropped or threw him from a second-story window, and then jumped herself when police attempted to enter the room where she had barricaded herself and her son.  The petition alleged further that Mother had been suffering from depression, had received emergency psychiatric services (EPS) on December 23, was planning to return to EPS on December 25, but she barricaded herself in her bedroom with M.A. before her mother could transport her.  Mother was placed on a psychiatric hold and was charged by the Santa Clara County District Attorney with attempted murder, assault with a deadly weapon, and child abuse.  The amended petition also alleged that Father had an outstanding drug-related criminal matter pending in Indiana, and Mother had been awarded temporary sole legal and physical custody of M.A. through family court.[2]

---

[1]  Welfare and Institutions Code section 300, subdivision (a), describes a child who has suffered nonaccidental serious physical harm by his parent or guardian. Subdivision (b) describes a child who has suffered serious physical harm as the result of his parent or guardian's willful or negligent failure or inability to adequately supervise the child.

[2]  Mother and Father are parties to family support and parentage actions involving M.A.  The family court's interim custody order was based on Mother's declaration in the parentage case identifying pending criminal charges against Father stemming from a July

*(Continued)*

Respondent Department of Family and Children's Services (Department) prepared a status review report in preparation for Father's family maintenance review hearing and Mother's six-month review hearing. The report recommended that the matter be dismissed, with sole physical and legal custody of M.A. granted to Father, and the continuation of professionally supervised visits for Mother. Mother's psychological evaluation report was attached to the status review report.

At the combined family maintenance and six-month review hearing on October 10, 2012, Mother did not contest the Department's recommendation that Father be given sole physical custody, but she testified in support of her request for joint legal custody of M.A. and more flexible visitation. The social worker who authored the status review report (Social Worker) testified in support of the recommendations in the report.

After considering the status review report, Mother's psychological report, testimony and argument, the juvenile court terminated jurisdiction over the family and dismissed the dependency action. The court's decision was based in part on its ability to make custody and visitation orders that would continue to address M.A.'s safety. The court adopted the Department's recommendation that Father be given sole physical custody, and that Mother's visitation continue to be professionally supervised, commenting: "Unless and until there is a greater understanding of the mother's mental health concerns and diagnoses, a more consistent history of medication compliance, and insight into her own need to monitor and maintain her mental health, the Court simply cannot accept the risk that the mother may suffer another type of breakdown that could place the child in substantial harm as has already occurred."

With regard to legal custody, the juvenile court concluded that the totality of the evidence supported joint legal custody. Specifically, the court noted Mother's effort to

2010 traffic stop in Indiana where Father was in possession of over 37 pounds of marijuana, in addition to an allegation that Child had eaten some marijuana while in Father's care.

come to terms with her mental health issues, her ability to be responsible, and her conduct during the course of the dependency proceeding. The court further noted that although both parents "exhibited behaviors and made choices that could arguably be described as unwise or irresponsible," they also both "appear to have strong family support on their respective sides," and can "jointly exercise legal decisions on behalf of a child this age, unless and until there is a need for further court consideration."

Finally, the juvenile court judge informed the parties that any request to change or modify his custody and visitation orders within one year from the date of the hearing would return back to his courtroom for consideration.

Father filed a timely notice of appeal, challenging the juvenile court's termination and custody order.

## II. DISCUSSION

### A.    AWARDING JOINT LEGAL CUSTODY WAS NOT AN ABUSE OF DISCRETION

When jurisdiction is terminated over a minor who has been adjudged a dependent child, the juvenile court may make custody and visitation orders that survive termination. (Welf. & Inst. Code, § 362.4.) The juvenile court considers the best interest of the child when determining legal and physical custody at the termination of a dependency proceeding. (*In re John W.* (1996) 41 Cal.App.4th 961, 973-974, superseded by statute on another point as stated in *In re Marriage of David and Martha M.* (2006) 140 Cal.App.4th 96, 102-103.) "[T]he juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31.) Legal custody is "the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, §§ 3003, 3006.) When legal custody is joint, the parents must share in that decision-making function. (Fam. Code, § 3003.)

Father argues that the court erred by failing to grant him sole legal custody of M.A. We review custody determinations in a dependency proceeding for abuse of discretion, looking to whether the juvenile court exceeded the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) We will not disturb the court's ruling unless it is arbitrary, capricious, or patently absurd. (*Id.*, at p. 318.) We review the factual findings on which the juvenile court's orders rest for substantial evidence. (*In re C.B.* (2010) 190 Cal.App.4th 102, 123.) "In applying the substantial evidence test, '[w]e do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts.' (citation.) 'Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion.' (citation.)" (*Id.*, at p. 127.)

Father contends that the juvenile court acted unreasonably by awarding joint legal custody to Mother, who was mentally ill, threw her son from a second-story window, and had not meaningfully addressed the mental instability that lead to the incident. According to Father, no evidence supported the finding that M.A.'s interest would be served by Mother sharing joint legal custody. Father describes Mother as being reluctant to participate in rehabilitative services and as not regularly taking her medication.

Father focuses on Social Worker's testimony that Mother was unable to be legally responsible for herself, and therefore she could not be responsible for a two-year old. Social Worker testified that she based her recommendation on Mother's psychological evaluation, Mother telling her that she did not need parenting classes, and Mother's history of anger problems and violent outbursts, including an incident when she broke a window at Father's house. In Social Worker's view, Mother had minimized and not accepted responsibility for the December 25 incident. Father further points to the psychologist's description of Mother as having her needs met at the expense of others,

insisting on getting her way, acting on impulses with poor judgment, and as being self-indulgent and capable of vindictive anger.

Mother counters that substantial evidence supported the juvenile court's joint legal custody determination.[3] We agree. Mother testified that she never meant to hurt her son and she considered the December 25 incident very serious. She recognized that she had a breakdown in December 2011, that she was treated by EPS on December 23, and discharged on December 24 with antidepressants. She acknowledged that "no one knows for certain whether the medication caused the incident," but she believed her conduct on December 25 was a bad reaction to the antidepressant. She testified that if she ever felt that way again, she knew to get help. She testified that her doctor directed her to stop taking the antidepressant that EPS gave her on December 24 and prescribed Abilify. She explained that she had not taken the Abilify for over a month because she had lost MediCal coverage. But her coverage had just been reinstated so she would resume Abilify that day, and would follow her doctor's instructions regarding the medication.

Mother testified that she was not presently seeking physical custody because she wanted to finish her 52-week parenting class program. She testified that the court-ordered counseling and parenting classes both had been helpful. She told the court she sought joint legal custody of M.A. because he was her son and she wanted to make decisions regarding his schooling and his health. This testimony supports the court's finding that Mother was making efforts to come to terms with her mental health issues. It also supports the court's determination that Mother has exhibited the ability to be legally responsible for M.A.

---

[3] The Department did not file an opposition brief. Instead, it wrote a letter to this court asserting that the juvenile court did not commit reversible error in its custody determination. It also brought to our attention The Superior Court of Santa Clara County, Local Family Rules, rule 2(c)(7), which we address in Part II. B., *infra*.

We find no abuse of discretion in awarding joint legal custody to Mother.  The juvenile court considered "the totality of [M.A.'s] circumstances" (*In re Roger S.*, *supra*, 4 Cal.App.4th pp. 30-31), including the poor judgment exercised by both parents, the progress both had made at becoming responsible parents, and the extended support of both families.  While the court recognized Mother's mental health condition warranted professionally supervised visits, it did not view her condition as preventing joint decision-making with Father regarding the education, medical care, and welfare of their son.[4]  In sum, the joint legal custody determination does not exceed the bounds of reason, and we will not disturb it.  (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318-319.)[5]

**B.     THE JUVENILE COURT'S ORAL PRONOUNCEMENT WAS NOT ERROR**

Father argues that the juvenile court exceeded its authority when, during its oral pronouncement of judgment, it stated:  "Any request to change or modify these custody and visitation orders within one year from today will be returned back to this court for consideration."  Father and Mother both assert that the court's oral order is inconsistent with Welfare and Institutions Code section 364, subdivision (c), as well as with the standard language on the court's final judgment using Judicial Council Form JV-200.  Section 364, subdivision (c), directs the juvenile court to terminate its jurisdiction when it

---

[4]  As further support for the court's determination, we note that on February 1, 2012, at an early stage in the proceedings, the court appointed a guardian ad litem for Mother.  On October 1, 2012, shortly before conducting its final review hearing, the court relieved the guardian ad litem.  To relieve a guardian ad litem, a court determines that the party is capable of (1) understanding the nature of the dependency proceedings, (2) meaningfully participating in the proceedings, and (3) cooperating with counsel in representing his or her interests.  (*In re R.S.* (1985) 167 Cal.App.3d 946, 979-980.)

[5]  We do not agree with Father's suggestion that the juvenile court applied a presumption of joint legal custody.  In commenting that it had "good reason to adopt what is in most cases the default position of joint legal custody," the court was merely acknowledging that joint legal custody is commonly ordered.  Here the record shows that the trial court made a reasoned decision, in light of the totality of the circumstances, to grant joint legal custody to Mother, without application of any presumption.

determines that continued supervision is no longer necessary, and Form JV-200 provides that after jurisdiction is terminated "requests for any modifications of these orders must be brought in the family court case in which these orders are filed . . . ." Mother cites *In re Michelle M*. (1992) 8 Cal.App.4th 326, which explains that Welfare and Institutions Code section 362.4 vests jurisdiction over child custody matters in the superior court family law division upon the termination of a dependency action.

The juvenile court's oral pronouncement of decision paraphrased, in part, The Santa Clara County Superior Court, Local Family Rules, rule 2(c)(7), and is neither inconsistent with the governing statutes nor the standard language contained on Form JV-200. Rule 2(c)(7), titled "Modification of Juvenile Court Exit Orders," provides: "Requests to modify the juvenile order filed within one year of the date the custodial order was entered shall be returned to the issuing juvenile department for hearing." To conform with the Welfare and Institutions Code, the rule provides also that the juvenile court judge sit as a family court judge for purposes of hearing the modification request. Thus, we conclude that the juvenile court's oral order was not error. While the juvenile court cannot bind the family court in future proceedings, in light of the local rule, the juvenile court did not exceed its authority, and no conflict exists between the oral pronouncement of decision and the Form JV-200 final judgment.

## III. DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.