Filed 6/9/14  In re Faith W. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re FAITH W. et al., Persons Coming Under the Juvenile Court Law. | B251101 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>L.W.,<br><br>    Objector and Appellant. | (Los Angeles County Super. Ct. No. CK96736) |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Objector and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey M. Blount, Deputy County Counsel for Plaintiff and Respondent.

Father L.W. appeals from a juvenile court order terminating dependency jurisdiction and reinstating a family law custody order as to his two daughters. He contends the dependency court abused its discretion in deciding not to give him full custody because of mother's issues.

We find no abuse of discretion and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Father and mother, Cynthia T., married in 2002 and had two children Faith (born in 2003) and Kayla (born in 2008). Their divorce was finalized in March 2011. The family court custody order provided for joint legal custody and physical custody of both children. The children were to be with father on the first, third, and fourth weekends each month, and Tuesday afternoon to Wednesday afternoon in the third and fifth week of the month (if any). Faith was to alternate weeks between parents during school breaks. Mother and father had mutual restraining orders active until December 21, 2013. Both father and mother had remarried.

The children came to the attention of the Department of Children and Family Services (the department) in November 2012 when police were called to respond to an episode of domestic violence between mother and her new husband, stepfather Dion H. Mother and stepfather refused to open the apartment door to police officers. Mother answered her cell phone and spoke with an officer, claiming that she was not at home, but the officer could see and hear movement in the apartment. Officers learned that stepfather was on active parole for murder and was suspected of dealing drugs and guns. Concerned about the safety of mother, the officers obtained a key to the apartment from the manager. Mother and stepfather surrendered when a police dog was sent into the apartment. Mother reported that she and stepfather had started arguing, and that she had sent the children to a downstairs neighbor. The children were crying when they arrived at the neighbor's apartment, unaccompanied, at 2:00 a.m. Neighbors reported hearing yelling and fighting in the apartment. Faith told a neighbor that she saw Dion physically abusing mother during the fight and that she was very frightened.

The apartment was in disarray and there was blood on the kitchen and bathroom floors.  Mother and stepfather explained the blood was the result of a cut lip he had received days earlier which reopened when he yelled at mother.  Mother and stepfather denied any physical altercation.  Both were arrested for hindering a police investigation, but not for domestic violence.  The frightened children were taken into protective custody, and placed with father, the nonoffending parent.

The department filed a petition alleging the children cAme within Welfare and Institutions Code section 300[1], subdivisions (a) and (b) because of domestic violence between mother and stepfather.  Mother told the department that Faith had lied about witnessing domestic violence.  Mother pled no contest to the petition as amended to allege failure to protect the children under section (b)(1) because of domestic violence in the home.  The court sustained the petition as amended.

Mother testified in the disposition portion of the hearing.  She stated that she had participated in parenting and domestic violence programs.  She learned that she had been in denial about the domestic violence in her relationship with stepfather and its harmful impact on the children.  She now felt that she needed the programs offered by the department.  Mother and stepfather had separated.  She had not had any visits with the children since they were detained, despite her efforts with the department to make arrangements for a monitor.  Mother planned to enroll in individual counseling shortly after the jurisdiction and disposition hearing.

Father also testified at the disposition hearing that the family court had issued a mutual stay-away order as to himself and mother, requiring them to stay away from each other's homes and places of employment. Before the hearing, mother saw the children for the first time in the lobby of the courthouse.  While holding the children, she cursed at father and called him and his family members evil.  The children were doing well in his care.  He opposed unmonitored visitation for mother because she had not exhibited good

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

judgment in the past. He also opposed having her visits at either her house or maternal grandmother's house. Father testified that mother had sent his wife threatening messages. He asked the court to terminate dependency jurisdiction with a family law order giving him sole legal and physical custody of the children.

Counsel for the department submitted on the recommendation that dependency jurisdiction be terminated with a family law order, and asked for monitored visitation for mother. The court continued the matter for identification of an appropriate monitor for mother's visits. The court also was concerned that closing the case with ongoing tension between mother and father was not in the best interests of the children. The case was sent to mediation on May 8, 2013, but it was not resolved. On May 14, 2013, mother filed for dissolution of her marriage to stepfather.

A last minute information filed with the court on July 2, 2013 reported that mother had completed a 14-week domestic violence program, a 12-week parenting program, and Parents Beyond Conflict. Mother had completed 20 of 20 individual counseling sessions. Her therapist reported that she had gained insight, and was better able to handle her parenting responsibilities. She had "effectively addressed the issues which brought her" into the counseling program. Mother told the social worker that individual counseling was "exactly what she needed to address the case related issues and her relationship with the father." She planned to continue with individual counseling. Mother's unmonitored visitation with the children finally began on May 27, 2013. Father reported that since then Faith had been acting out, saying that mother was telling the child that she did not have to behave herself at home or at school because she would be going back to mother and her old school. Mother denied this conduct and said she wanted to get along with father.

The contested disposition hearing resumed on July 2, 2013. The department had changed its recommendation. In light of mother's significant progress, it concluded that the safety concerns that led to the removal of the children from mother no longer posed a risk to them. It recommended closing the case with a family law order giving mother and father joint legal and physical custody, with alternate weekly visits in the summer.

4

At the continued hearing on August 27, 2013, counsel for mother informed the court that father had stopped visitation for mother and enrolled the children in school in Palmdale, near his residence. Mother had intended to enroll the children in their old schools near her home in Hawthorne. Counsel for the children reported that Faith wanted to attend her original school with her friends, although the children were doing fine with father. Counsel for father said father wanted the children to remain with him.

The court observed "[w]here possible we are to return to the status quo ante when we found the family. When the court determines that there's no substantial risk, our job is at an end. And our job is not to fix the interpersonal relationships between mother and father because dependency court is not the place to fight out family law issues. [¶] So I see no reason to continue jurisdiction in this case. Court is terminating jurisdiction. I see no reason at this particular point to upset the underlying family law order that is in place. And that'll be the court's order."

Father filed a timely appeal from the dispositional order.


**DISCUSSION**

The juvenile court has broad discretion to fashion a dispositional order which would best serve and protect a child's interests. (*In re A.J.* (2013) 214 Cal.App.4th 525, 536–537.)

Father argues the juvenile court abused its discretion by terminating dependency jurisdiction and reinstating the former family law order. He contends the juvenile court should have entered new family law exit orders pursuant to section 362.4 and section 304, which gives the juvenile court exclusive jurisdiction over custody issues regarding a minor who is the subject of dependency proceedings. (*In re J.D.* (2013) 219 Cal.App.4th 1379, 1388–1389.) "Under section 362.4, the juvenile court may, when it terminates jurisdiction over a case, issue an order 'determining the custody of, or visitation with, the child.' The juvenile court's section 362.4 order may be enforced or modified by the family court. [Citations.] Custody and visitation orders issued under section 362.4 are

5

sometimes referred to as "'family law'" orders or "'exit'" orders. [Citations.]" (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 594, fn. 5.)

In effect, father argues that mother's completion of parenting and domestic violence programs and extensive counseling were not sufficient to warrant a return to the family court custody order. He acknowledges that mother had filed for divorce from stepfather. But he contends that mother was only recently recovered, and had a violent and chaotic past. Father repeats his accusation that mother coached Faith to misbehave in her current school and with father in anticipation of returning to mother's custody, a charge denied by mother. In contrast, father asserts that he provided a safe, nurturing environment for the girls.

We find no abuse of the juvenile court's discretion in terminating dependency jurisdiction and ordering that custody resume under the family court order. As the court observed, it is not for the dependency court to repair the relationship between mother and father.

Appellate courts have held that where there is no basis for dependency jurisdiction, any disputes regarding custody and visitation are properly resolved in the family courts. (*In re A.G.* (2013) 220 Cal.App.4th 675, 686 [error to sustain dependency petition based on mother's mental illness where father is capable of caring for and protecting children, remand to family court to resolve custody and visitation]; *In re John W.* (1996) 41 Cal.App.4th 961, 975–976, superseded on other grounds by statute as noted in *In re Marriage of David & Martha M.* (2006) 140 Cal.App.4th 96, 102–103 [dependency jurisdiction terminated after one year and remanded to family court to resolve custody].)

Any further disputes regarding custody of the children are most properly addressed to the family court.

## DISPOSITION

The order terminating dependency jurisdiction and reinstating the family court custody order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the chief Justice pursuant to article VI, section 6 of the California Constitution.

7