Filed 9/28/23  In re Isabella C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re ISABELLA C., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. MAURICE P., Defendant and Appellant. | G062619 (Super. Ct. No. 22DP1292) O P I N I O N |

Appeal from orders judgment of the Superior Court of Orange County, Lindsey E. Martinez, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

Maurice P. (the father) appeals the court's dispositional orders returning Isabella C. (Isabella or the child) to the custody of Rosa C. (the mother), arguing the lower court abused its discretion by finding that Isabella would be safe while in the mother's care during visits. He asks this court to reverse and remand with directions that the father be granted primary physical custody with only supervised visits for the mother. The Orange County Social Services Agency (SSA) opposes, arguing the court did not abuse its discretion and that substantial evidence supported the court's findings. We agree with SSA and therefore affirm the orders.

I

FACTS

In the interests of brevity, we focus our statement of facts on the issues pertinent to the issue on appeal.

Following an investigation by SSA and the Fullerton Police Department, then eight-year-old Isabella[1] was detained on September 26, 2022. The petition[2], filed September 28, alleged that Isabella came within the jurisdiction of the court Welfare and Institutions Code section 300, subdivisions (b)(1), (d) alleging, respectively, failure to protect and sexual abuse.

During the investigation, the child disclosed sexual abuse by her mother's boyfriend, Ricardo R. (Ricardo). She told investigators that Ricardo lived with them. The abuse alleged consisted of Ricardo "hugging and touching the child's buttocks, having the child lie on top of him while making moaning noises, and kissing the child with his tongue in her mouth." Isabella described the abuse and drew a picture of herself

---

[1] A petition was also filed as to Isabella's 16-year-old half sister, J.R. As she is not part of this appeal, we omit references to her from this opinion whenever possible.

[2] Subsequent statutory references are to the Welfare and Institutions Code unless otherwise indicated.

lying on top of Ricardo in the mother's bed. She denied he touched her "private parts," exposed his private parts to her, or exposed her to pornography.

Isabella had reported this conduct to her mother, who, the child said, "did not believe her." When interviewed, the mother said the child was lying and denied Ricardo lived in the home or was ever alone with the child. The mother said that Isabella "makes up stories she gets from her iPad" and "watches bad things on her iPad," including R-rated movies. The mother said she found out the child had been watching sexual content by reviewing her iPad history, and she had since monitored the child's iPad use. She stated the picture Isabella had drawn was impossible as the child was never left alone with Ricardo, and she denied the child had ever disclosed any abuse.

Ricardo, however, confirmed he was home alone with the child on a day she stayed home from school, the same day she reported the conduct to her mother. Otherwise, he denied the allegations of abuse, also claiming that the child's reports were due to watching age-inappropriate videos. He denied residing at the mother's home, but acknowledged that he stayed "a few days at a time."

With respect to general neglect, the child reported there were times when she did not have enough food for dinner, because her mother "'has no money, she spends it all on Rico.'" She also stated she did not have enough clothing and that a lot of her clothes were too small for her. She believed her mother liked Ricardo "'way better than me.'" Isabella also told investigators that there were both drugs and alcohol in the home.

The child also reported that Ricardo had a gun in the house, and she was scared and believed he would shoot up the house. Ricardo admitted threatening the child's adult brother when the brother had allegedly threatened him, but denied possessing a gun. Ricardo was on probation and had a prior conviction for domestic violence. The child reported witnessing several incidents of domestic violence between Ricardo and the mother, including "'a lot' of arguing."

3

The father, who lived in Oregon, reported that he was concerned about the child's care in the mother's custody and stated he had sought custody of Isabella and had been granted visitation. His relationship with the mother had been difficult and marked by conflict.

On September 29, the court sustained the petition with amendments. The sustained petition included allegations regarding sexual abuse of the child by Ricardo, the domestic violence between the mother and Ricardo, the mother's failure to provide appropriate supervision and to ensure that basic needs were met, and the mother and father's relationship and custody dispute.

On September 30, the court granted a temporary restraining order protecting the mother and the child from Ricardo.[3] The court ordered the child released to the father and ordered him to enroll her in services.

In the October 20 jurisdiction/disposition report, the social worker recommended that the petition be sustained and dependency be terminated with exit orders. In sum, Isabella's narrative remained consistent, but she did not wish to speak further about the sexual abuse. The child missed her mother and adult siblings, and stated she felt safe with the mother and not with Ricardo. She wanted to stay with her mother and visit her father.

The mother, for her part, again stated she did not believe the sexual abuse petition and stated Isabella had not disclosed it to her, but admitted Isabella had said she did not feel comfortable when Ricardo hugged or kissed her. She felt "confused" by the abuse allegations. She denied putting her boyfriend before her children and stated if she had known about the abuse, she would have taken action. The mother stated she was at home in her room on the day the alleged abuse occurred and had no idea why Ricardo stated he was alone, but claimed she had been drinking. She denied physical domestic

_____

[3] Ultimately, Ricardo could not be served with the restraining order.

4

violence, claiming she and Ricardo argued but the arguments did not escalate. The mother also denied the presence of firearms in the home. As to the general neglect allegations, the mother denied them, stating she made sure the child eats and there was always food in the home. She stated the child had clothes that fit.

The father stated he learned about the abuse allegations for the first time when he was contacted by SSA. He stated Ricardo had threatened to shoot him on one occasion. He denied the relationship with the mother was rife with conflict, stating she was a "'great mother'" and "'provider.'" He believed, however, that the mother involved herself with people with whom the child was not safe. The father expressed concern about the child having unsupervised visits with the mother due to her inability to protect her from abuse. He stated "the mother needed to be held accountable for what occurred." He further stated that as long as the child was safe, he did not have a problem with the child visiting the mother.

At the jurisdiction hearing on October 20, the parents submitted on the amended petition, and the court set a disposition and review hearing, with Isabella remaining in the father's care in the meantime. Supervised virtual visits were authorized between Isabella and the mother.

In the following period, the mother enrolled in an abuse therapy program at UCI and had completed six sessions by February 2, 2023. The mother's therapist stated she was "doing well and will address the reasons that led" to SSA's involvement. The mother now believed Isabella and had told the therapist she had not suspected abuse because she had not seen any change in Isaballa's behavior. It appeared the mother wanted to support the child in any way she could, and she seemed to be protective and receptive to feedback. Her therapy had addressed how she could advocate on her child's behalf. While the mother found it difficult to coparent with the father, she wanted to have a good relationship with him and avoid conflict.

5

The mother's telephonic visits were liberalized to unsupervised. The father stated this seemed crazy to him and that the case appeared to be moving backwards. Isabella was generally doing well in the father's care.

A contested disposition hearing began in late April. SSA's reports were submitted and the child testified. Isabella missed the mother and wanted more visits, and she expressed wanting to live with her mother, which was a change from her previously stated wishes.

The social worker assigned to Isabella's 17-year-old half sister, J.R., reported that J.R. said that neither she nor the mother have had any contact with Ricardo. Only the mother and J.R. currently lived in their home. The mother's therapist reported she was doing "'really well'" in therapy and doing a good job advocating for the child. She appeared receptive to therapy and appeared to be integrating what they were working on.

In an addendum report, SSA changed its recommendation to terminating dependency with the child to remain in the father's primary care and the parents to share custody. The social worker opined: "Throughout the life of the case, the father has provided the child, Isabella with a safe home environment and has ensured all her basic needs have been met. In addition, the father and the child participated in case plan services by attending therapy to address the issues that led to the Agency's involvement. Further, the father has also enrolled the child in extracurricular and education activities. [¶] As it pertains to the mother, it is believed she has eliminated the safety concerns in her home and has actively participated in her case plan services. It is reported the mother has addressed, in therapy, the reason that led to the involvement of the Social Services Agency and the mother has made great progress."

At the hearing, the social worker testified consistent with the reports. She stated that Ricardo did not live in the mother's home and was not around. The mother

now believed Isabella's allegations and had addressed the issue of being protective of her daughter in therapy, as reflected by Ricardo no longer being in her life.

After the close of evidence, the father and Isabella's counsel argued for only supervised visitation for the mother. SSA argued it could not meet its burden under section 361, subdivision (c), to show by clear and convincing evidence that removing the child was required for her safety. SSA recommended primary custody to the father and extended visits for the mother. The mother requested joint custody.

The court found there was no longer any risk to the child in the mother's home. "The same concerns articulated in the petition are no longer outstanding today." The mother's progress in therapy, among other factors, indicated that SSA had not met its burden under section 361, subdivision (c), to show that removal was necessary, and the court was therefore required to keep custody with the parents. The court declared Isabella a dependent and terminated dependency with custody orders (also known as exit orders), which included shared legal and physical custody to both parents. The child's primary residence was to be with the father. The court's order included visitation and contact orders, which provided for visits with the mother during certain school breaks and holidays.

The father now appeals.

II

DISCUSSION

The father's only argument on appeal is that the court abused its discretion when, "in the face of overwhelming evidence," it determined that Isabella would be safe in the mother's custody during supervised visits. (Boldfacing & capitalization omitted.) He asks this court to reverse and remand to the lower court with directions that the father be granted primary physical custody with only supervised visits for the mother.

7

*Relevant Law and Standard of Review*

"If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the . . . court . . . on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a).) "Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. The order of the juvenile court shall be filed in the [relevant family law] proceeding . . . at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof." (§ 362.4, subd. (b).) Pursuant to section 302, subdivision (d), any such order is deemed a final judgment and remains in effect after the termination of jurisdiction. The order may only be modified if a significant change of circumstances exists. (*Ibid.*)

"[I]n making [termination and custody] orders, the juvenile court must look at the best interests of the child." (*In re John W.* (1996) 41 Cal.App.4th 961, 973, superseded by statute on another point as stated in *In re Marriage of David & Martha M.* (2006) 140 Cal.App.4th 96, 102-103.) A court must evaluate these interests "in the context of the peculiar facts of the case before the court." (*John W.*, at p. 965.) "The issue of the parents' ability to protect and care for the child is the central issue. The presumption of parental fitness that underlies custody law in the family court just does not apply to dependency cases." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.) The court must consider the totality of the circumstances and issue orders that are in the child's best interests. (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)

"'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case [citation].' [Citation.] We review the juvenile court's exit orders for an abuse of that discretion. [Citations.] We will not disturb the juvenile court's decision '""unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."""' (*In re J.M.* (2023) 89 Cal.App.5th 95, 112-113.) There is no abuse of

discretion where substantial evidence supports the court's order. (See *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)

In determining whether substantial evidence exists, "[w]e do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.] The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value. [Citation.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*Ibid.*)

*Analysis*

The father supports his argument that the trial court erred by going back to the date of detention and reviewing the facts of the case from that point: "Isabella cannot be deemed safe, because not only did mother repeatedly accuse her of lying about her sexual abuse, mother repeatedly insisted that Isabella never even *told* her about the abuse. Right from the start, Isabella told law enforcement and the Agency that she told mother that mother's boyfriend sexually abused her, but mother did not believe her." By approaching the facts in this manner, the father turns the substantial evidence question on its head. He is not reviewing the evidence upon which the court actually based its decision – the mother's status at the time of the disposition hearing – and questioning its sufficiency. Rather, he is reviewing every fact that might weigh against the mother from the start of the case and asking this court to reweigh those facts.

We decline to do so. There is no question that the mother failed at the beginning of the case in numerous ways. But instead of going back to the beginning of

9

the case, we examine the evidence upon which the court actually based its ruling and determine whether that evidence is sufficient to support the order under the substantial evidence standard of review. The court found that "while [Isa]bella has been sexually abused, there's no evidence that she remains at risk in mother's home." This finding was supported by substantial evidence. No evidence was presented at the disposition hearing that the mother and Ricardo had any contact since the emergency protective order had been in place; indeed, the only evidence was that there had not been any contact. Isabella's teenage half sister reported in April 2023 that he had not been in the home, nor was she aware of any contact between Ricardo and the mother.[4]

The father argues that Isabella cannot be deemed safe in the mother's care because "throughout the *entire case*" the mother lied about whether she and Ricardo were living together. But the court could reasonably find this an exaggeration of the facts based on Ricardo's statements that there were other places where he lived and slept. He claimed he stayed with the mother "a few days at a time." Ultimately, whether he lived with the mother before the outset of the case was far less pertinent than the lack of evidence that he was living with her at the time of the hearing. The court was free to give this conflict in the facts the weight it deemed appropriate, and the father's statement that Isabella "cannot be deemed safe" in the mother's care is not supported by any cited legal principle.

To remedy the issues that had led to dependency, the mother had been in therapy. As of April 2023, her therapist reported that she was doing "'really well,'" was receptive, and was integrating what she learned in therapy. There was no evidence that the mother had not taken therapy seriously or not sought to learn from it. She had stated

---

[4] The father also claims the mother "never got a permanent restraining order." The uncontradicted information in the record shows that the mother had never been able to serve Ricardo with the temporary order. Placing blame for this on the mother is unpersuasive.

to the therapist that she believed the abuse had taken place in February 2023. All of these facts show steady progress, as reflected in the therapist's reports. The last report before the hearing stated the mother "can acknowledge types of abuse, safety and warning signs of abuse. She continues to process how to communicate with daughter on safety, set safe healthy boundaries and effectively co-parent. She is making steady progress in discussing allegations. Discussed advocating for daughter and visits." While the father is free to denigrate the mother's progress as "measly" and insufficient, the evidence supported the court's finding that the mother had made significant progress. SSA also believed there was no substantial risk to the child in returning her to the mother's care at the time of the hearing.

We cannot take seriously the father's contention that the fact that J.R., the half sister, may or may not have believed Isabella's sex abuse allegations by the time of the hearing as demonstrating that Isabella would be unsafe in the mother's care. First, we do not know what J.R. believed by the time of the disposition hearing, as the father only quotes J.R.'s statements from the early days of the case. Second, to hold a teenager's subjective beliefs against the mother would have been an abuse of the court's discretion. If there is anything in the world a parent cannot control, it is what a teenager believes. There was no indication in the record that J.R. had ever discussed the sex abuse allegations with Isabella, and no reason to believe she would do so in the future.

The court had numerous pieces of evidence to support its finding. It had the lack of any evidence of contact between the mother and Ricardo, it had SSA's opinion based on the entire record in the case, and it had the opinion of the mother's therapist. Taken together, this was substantial evidence to support the court's finding that the child would be safe in the mother's care during visits. The father has failed to meet his burden to show an abuse of the court's discretion, relying instead on cherry-picked facts designed to show the mother in the worst light possible.

11

## III

## DISPOSITION

The orders are affirmed.

MOORE, ACTING P. J.

WE CONCUR:

GOETHALS, J.

MOTOIKE, J.