Filed 1/23/25  In re D.G. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.G. et al., | B336409 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 23CCJP04453AB) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.G., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Liana Serobian, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

S.G. (father) appeals from the juvenile court's jurisdictional findings and dispositional orders awarding S.G. (mother)[1] sole physical custody of their children D.G. and L.G.  Father argues the trial court's findings were not supported by substantial evidence.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Father and mother were married from 2008 to 2015; D.G. was born in 2010, and L.G. was born in 2013.  Father filed for divorce in 2015, the divorce was finalized in 2017, and family law custody proceedings have recurred since then.  As of 2019, father had primary physical custody of D.G. and L.G.

### I.    *Referral*

On December 7, 2023, the Department of Children and Family Services (Department) received a hotline referral reporting that D.G. and L.G. had been abused by both father and their paternal grandmother, who lives with father.  The report indicated father had placed D.G. in a chokehold in a store parking lot, slapped him, threatened to kill him, and kept a firearm in the house.  The report also referred to several other incidents, some of which involved the paternal grandmother.

A Department case worker and a police officer interviewed father, D.G., and L.G. the same day the referral was received.  Father denied the allegations and blamed mother, claiming the report must have been a response to their family law disputes.  D.G. confirmed the report and provided a picture of his hand where father had slapped him; he also reported that father had thrown a slipper at L.G.  L.G. said she saw father put D.G. in

---

[1]    Father and mother share the same initials.

a chokehold but thought "they were just playing." She said father threw a coat hanger at her and the paternal grandmother would pull her hair and grab her arm, pointing to a scratch she said her grandmother had caused. Both D.G. and L.G. expressed fear of father.

The children were immediately removed from father's care. The Department case worker interviewed mother, who provided text messages in which D.G. told her father had choked him. Mother said the children had reported similar incidents before.

The Department interviewed several other people who interacted with the children, including the driver father hired to take the children to school, D.G.'s therapist, a maternal cousin, the family's joint therapist, a daycare provider, and a friend of father. D.G.'s therapist said D.G. had spoken with her about being abused by father. The maternal cousin said the children had told her similar things. The family's joint therapist "denied having any safety concerns, and reported the children have never disclosed any abuse or neglect by anyone." The driver, daycare provider, and father's friend all likewise reported no concerns.

Father and mother were both interviewed again in the days following the referral. The Department also attempted to speak with the paternal grandmother, unsuccessfully.

II.    *Petition*

On December 29, 2023, the Department filed a dependency petition on behalf of both D.G. and L.G. under Welfare and Institutions Code section 300,

subdivisions (a), (b)(1), (c), and (j).[2]  D.G. was 13 years old and L.G. was 10 years old at the time.  The petition contained 14 counts.

Counts a-1, b-1, and j-1 alleged father had physically abused D.G. by choking him, striking him, pushing him, pinning him in a corner, threatening to kill him, and brandishing a knife.  Counts a-2, b-2, and j-2 alleged father had physically abused L.G. by throwing a clothes hanger and other objects at her, threatening to remove her from his home, threatening to kill her, and brandishing a knife.  Counts b-3 and j-3 alleged the paternal grandmother had physically abused L.G. by pulling her hair and scratching her arm, and father had failed to protect L.G.  Counts b-4 and j-4 alleged that both father and mother failed to obtain necessary mental health services for D.G.  Counts b-5 and j-5 alleged that both father and mother failed to obtain necessary mental health services for L.G.  Count c-1 alleged father emotionally abused D.G., and that mother emotionally abused D.G. by failing to obtain mental health care for D.G.  Count c-2 alleged father emotionally abused L.G., and that mother emotionally abused L.G. by failing to obtain mental health care for L.G.

The trial court held its initial hearing in January 2024.  Father "submit[ted] the issue of detention to the court" without argument.  The court ordered the children detained from father and released to mother.

III.  *Jurisdiction/Disposition*

The court made its jurisdictional findings and dispositional orders in March 2024.  Prior to the hearing, the Department submitted an interlineated petition which removed counts b-4, b-5, j-4, and j-5.  This

---

[2]    All future statutory references are to the Welfare and Institutions Code, unless otherwise stated.

4

eliminated any allegation that mother or father failed to obtain necessary mental health services for D.G. or L.G. The interlineated petition also removed mother from the allegations in counts c-1 and c-2. No allegations against mother remained in the petition.

The trial court divided the hearing into two phases, taking the jurisdictional portion first and the dispositional portion second. The court began its jurisdictional analysis by finding D.G. and L.G. credible and finding no evidence they had been coached. The court sustained counts a-1, a-2, b-1, b-2, j-1, and j-2, finding that father had physically abused both D.G. and L.G., though it amended the language of the counts to say that father had "placed his hand on" a knife rather than "brandished" it. The court also sustained counts b-3 and j-3, finding that father had failed to protect L.G. from physical abuse by the paternal grandmother. However, the court dismissed counts c-1 and c-2, finding the Department had failed to meet its burden of proving emotional abuse.

In the dispositional phase of the hearing, father requested enhancement services and reunification services. He also objected to any determination that mother should have sole legal custody. The court ordered that father and mother would have joint legal custody, but directed that mother would have sole physical custody of the children. Father was permitted monitored visits every other Saturday for four to six hours. Having made these orders, the court terminated jurisdiction.

Father timely appealed.

## DISCUSSION

Father argues the trial court's jurisdictional findings were not supported by substantial evidence. He also argues the trial court failed to

5

make the required findings at the dispositional stage or state the basis for those findings. Finally, he argues that even if the required findings were made, they were not supported by substantial evidence. We conclude all the required findings were made and were sufficiently supported. We also conclude father has forfeited any argument that the trial court failed to state the basis for its findings.

I. *Jurisdictional Findings*

"We review the decision of the juvenile court under the substantial evidence test, considering whether there is substantial evidence, whether contradicted or not, that supports the position of the trier of fact. We resolve conflicts in favor of the decision, and do not reweigh the evidence or determine the credibility of the witnesses." (*In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1254 (*Roberto C.*).)[3]

The trial court found D.G. and L.G. credible. D.G. reported father choking him, pinning him in a corner, striking him, and threatening him. While L.G. thought the choking incident might have been playful, she reported the same events as D.G. D.G.'s therapist said D.G. had spoken to her about these events as well.

L.G. reported that father threatened her and threw various items at her (including a slipper and a coat hanger) and that paternal grandmother scratched her and pulled her hair. D.G. confirmed L.G.'s account.

---

[3] As the Department points out, we may affirm the trial court's jurisdictional order if even one of the counts is supported by substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) However, both parties treat the petition as a single unit; neither provides a count-by-count analysis. Therefore, we also discuss the petition as a whole.

Mother and the maternal cousin indicated both children had reported similar events to them. Mother provided text messages from the children containing some of these reports. The trial court noted the consistency of the children's statements to the Department and to the interviewing police officer. The testimony of one witness is sufficient to prove a fact; here there are two, and their credibility was supported by the consistency of their statements. (See *In re S.A.* (2010) 182 Cal.App.4th 1128, 1148.)

Father points to other evidence he contends contradicts the children's statements and argues the children were reacting to events in the existing family law custody dispute. However, "we resolve conflicts in favor of the decision." (*Roberto C., supra,* 209 Cal.App.4th at p. 1254.) The trial court found the children credible, and we do not reconsider that determination on appeal. (*Ibid.*) The trial court's jurisdictional findings are supported by substantial evidence.

Father claims this is a custody battle which belongs in family court, citing *In re John W.* (1996) 41 Cal.App.4th 961 (*John W.*), superseded by statute on unrelated grounds as noted in *In re Marriage of David & Martha M.* (2006) 140 Cal.App.4th 96, 102–103. In *John W.*, multiple abuse allegations were made against both parents of an infant boy, but the court never ruled on the allegations; instead, the parents stipulated to continued juvenile court jurisdiction based on the "tense" emotional environment created by their custody battle. (*Id.* at pp. 965–968.) The juvenile court eventually terminated jurisdiction and ordered joint physical custody because it could see no reason to prefer one parent over the other. (*Id.* at pp. 968–969.) The Court of Appeal reversed and remanded the case to family court at the request of both parents, observing that the juvenile court should not have

accepted the stipulation to jurisdiction, which resulted in the custody dispute being carried out in the wrong forum. (*Id.* at pp. 974–977.)

Here there was neither a stipulation to jurisdiction nor a joint request made on appeal to transfer the case to family court, as in *John W.* The juvenile court made a ruling after a contested hearing, and father challenges the sufficiency of the evidence to support the ruling. *John W.* does not apply.

II.     *Dispositional Orders*

Section 361, subdivision (c) provides that "[a] dependent child shall not be taken from the physical custody of [their] parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5)." The trial court here applied paragraph (1), which requires "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and . . . no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) Section 361, subdivision (e) also requires the court to "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from [their] home . . . [and] state the facts on which the decision to remove the minor is based."

Father argues the trial court failed to apply the clear and convincing evidence standard and failed to evaluate whether a reasonable alternative to removal existed. This is not what the record shows. Both the transcript and the court's orders expressly reflect findings made by clear and convincing evidence. They also reflect a finding that reasonable efforts were made to

8

prevent removal, but that no reasonable means existed to protect the children short of removal.

Father also contends the trial court failed to state the facts on which its decision was based. However, father forfeited this argument by failing to raise the issue at the hearing. (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.) His counsel objected to termination of jurisdiction, the length of an anger management course, a counseling requirement, and the potential award of sole legal custody to mother. But at no point did counsel object to the removal of physical custody, much less suggest the court had failed to explain the basis for that decision.

The Department argues father forfeited all challenges to the trial court's disposition by failing to object to the physical custody order. However, a party only forfeits all challenges if they expressly submit to the Department's recommendation and the court subsequently adopts that recommendation. (*In re N.S.* (2002) 97 Cal.App.4th 167, 170–171.) Even though father did not object to the physical custody portion of the court's dispositional order, he retains his right to challenge the sufficiency of the evidence supporting it. (*Ibid.*)

Father's argument regarding the evidence to support the dispositional orders is identical to his argument regarding the evidence to support the jurisdictional findings. He does not discuss any difference between the legal standards or factual elements, nor does he explain how the court should have reached a different result at disposition than it did on jurisdiction.

Where the trial court has found a fact by clear and convincing evidence, we consider whether "a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 996.) For the reasons given in the previous section, it was reasonable for

9

the court to find D.G. and L.G. credible.  Having done so, it was also reasonable to find it highly probable that returning the children to father's custody would create a substantial danger to their physical health, safety, protection, or physical well being.  The juvenile court's dispositional order is supported by substantial evidence.

## DISPOSITION

The juvenile court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.

MORI, J.

10